# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MICHAEL J. DeGUELLE,

                Plaintiff,

v.

KRISTIN J. CAMILLI,
MARK H. ECKHARDT,
GAYLE P. KOSTERMAN,
ROBERT S. RANDLEMAN,
DANIEL J. WENZEL, and
S.C. JOHNSON & SON, INC.,

                Defendants.

Case No. 10-CV-103-JPS

ORDER

This matter comes before the Court on a motion for summary judgment filed by the defendants, S.C. Johnson & Son, Inc. ("S.C. Johnson") and several of its employees, on March 1, 2012, after the Seventh Circuit reversed and remanded the Court's prior dismissal of the action. (Docket #25). The action stems from the defendants' firing of the plaintiff, Michael DeGuelle, a former employee of S.C. Johnson's accounting department who publicly made allegations that S.C. Johnson had engaged in tax fraud. (Compl.) S.C. Johnson filed suit against DeGuelle in state court for defamation, and DeGuelle counterclaimed; after that case was decided—unfavorably for DeGuelle—the defendants moved for summary judgment based upon issue preclusion and claim preclusion principles. (Docket #38). With the benefit of the parties' submissions, together with the analysis which follows, the defendants' motion will be granted.

1.      BACKGROUND

As mentioned above, this dispute stems from DeGuelle's allegations that S.C. Johnson engaged in tax fraud. (Compl.). After DeGuelle made that accusation, he was fired. (Compl.). This core set of facts—recounted in greater detail below—spawned two lawsuits, one in state court and one in federal court (the matter at hand). (*See, e.g.*, DPFF ¶ 5). Further, DeGuelle has appealed the outcome of the state case, and the appeal is currently pending; the federal case was reversed by the Seventh Circuit on appeal and remanded to this Court following our prior dismissal of the action (Docket #11, #25). Given these multiple and complex strands of intertwining litigation, the Court will recount the factual background and other court proceedings that have occurred in considerable detail.

1.1      Factual Background

DeGuelle was employed by S.C. Johnson in its tax department from 1997 until 2009. (DPFF ¶ 4). DeGuelle alleges that, during his employment with S.C. Johnson, he witnessed a number of acts of tax fraud, dating back as far as 1998, which were approved by Robert Randleman and Daniel Wenzel. (PPFF ¶¶ 55–68).[1] Finally, in late 2007 and early 2008, DeGuelle met with Kristin Camilli, S.C. Johnson's Director of Human Resources, and informed

---

[1] The legality of S.C. Johnson's actions (and whether those actions did, in fact, occur) is of no importance to the Court's consideration of the defendants' motion for summary judgment. Therefore, at this stage of litigation, it suffices for the Court to simply state that DeGuelle has "alleged" several acts of tax fraud. Similarly, the Court's description of DeGuelle's intra-company notification of the alleged fraud is ultimately irrelevant to the motion at hand; as such, despite DeGuelle's alleged facts being wholly conclusory, the Court will set forth those alleged facts in order to provide as much depth and background to this story as possible. In such instances, the Court has noted, parenthetically, that such facts remain "disputed."

Case 2:10-cv-00103-JPS   Filed 05/29/12   Page 2 of 22   Document 54

her of the alleged tax fraud and also that he had received threats from Wenzel as a result of objecting to the company's tax practices. (PPFF ¶¶ 69–72 (disputed)).

Wenzel's alleged negative treatment of DeGuelle continued through 2008. (PPFF ¶¶ 74–76 (disputed)). At times, Wenzel became agitated around DeGuelle. (PPFF ¶¶ 82–83 (disputed)). Then, in September 2008, Wenzel issued a negative performance review of DeGuelle's work, which was later determined to be fraudulent and in retaliation for DeGuelle's accusations. (PPFF ¶¶ 84–85 (disputed)).

Also during 2008, DeGuelle met occasionally with Gayle Kosterman, S.C. Johnson's General Counsel, to discuss the alleged tax fraud and also Mr. Wenzel's retaliation. (PPFF ¶¶ 80–81, 85–86). Kosterman (along with Camilli) were somewhat concerned with Wenzel's issuance of a negative performance review (PPFF ¶ 85 (disputed)), but were ultimately confident that S.C. Johnson was not guilty of tax fraud (PPFF ¶ 81 (disputed)) and urged DeGuelle to "drop the matter and move forward" (PPFF ¶ 86 (disputed)).

Undeterred, on December 18, 2008, DeGuelle filed a whistle-blower complaint under the Sarbanes-Oxley Act. (PPFF ¶ 87 (disputed)). In early 2009, DeGuelle notified the Internal Revenue Service and United States Department of Justice of the alleged tax fraud. (PPFF ¶ 88 (disputed)).

Shortly thereafter, Kosterman spoke with DeGuelle and offered him the opportunity to resign his position and receive one year of salary and benefits if DeGuelle released any legal claims and signed a confidentiality agreement. (PPFF ¶ 93 (disputed)).

DeGuelle, of course, declined the offer, and was then fired in early April of 2009. (PPFF ¶¶ 93–94 (disputed)). According to the termination letter DeGuelle received on April 11, 2009, the termination—approved by Kosterman, Randleman, and Mark Eckhardt (another of DeGuelle's superiors in the tax department)—was based upon DeGuelle's having disclosed confidential business documents to outside parties and having been untruthful during company investigations. (PPFF ¶¶ 95–96 (disputed)).

### 1.2    Procedural Background

At that point, the parties began their slog through the courts, beginning with S.C. Johnson's state court action against DeGuelle, and followed by DeGuelle's federal RICO action against S.C. Johnson and the individual defendants in this Court.

#### 1.2.1    Institution of State Court Proceedings

In short measure, on April 28, 2009, S.C. Johnson filed an action against DeGuelle in Racine County Circuit Court. (DPFF ¶ 5 (citing *S.C. Johnson v. DeGuelle*, 09-CV-1683 (the "state court action"))). In that state court action, S.C. Johnson asserted claims for replevin, breach of a confidentiality agreement, and conversion, and sought the return of company property it alleged DeGuelle had in his possession. (DPFF ¶ 6, PPFF ¶ 97).

In the following months, both DeGuelle and S.C. Johnson allegedly made statements to media outlets accusing each other of dishonesty and criminal conduct. (DPFF ¶ 7, PPFF ¶ 98). S.C. Johnson amended its complaint to state two defamation claims against DeGuelle. (DPFF ¶ 8). DeGuelle, for his part, sent a letter to S.C. Johnson demanding that it retract its statements; S.C. Johnson refused.

Thus, on July 6, 2009, DeGuelle—who was, at the time, represented by an attorney—filed his answer and at the same time asserted several counterclaims against S.C. Johnson for defamation, wrongful termination, and breach of contract. (DPFF ¶¶ 9, 13, 14, PPFF ¶ 101 (disputed)).

### 1.2.2    Institution of Federal District Court Proceedings

On February 5, 2010, while the state court action was still pending (and also while he was still represented by counsel), DeGuelle filed the federal RICO action at hand. (DPFF ¶ 1). He alleged that the individual defendants engaged in RICO predicate actions, such as mail fraud and retaliation, all as part of a pattern of tax fraud. (*See* Compl.).

Concluding that the alleged predicate acts of retaliation were not sufficiently related to the alleged tax fraud, this Court dismissed those RICO claims on April 9, 2010.  (Docket #11).

DeGuelle then appealed this Court's decision to the Seventh Circuit. (Docket #13–25).

### 1.2.3 Withdrawal of DeGuelle's Trial Counsel

During the early summer months of 2010, DeGuelle's trial counsel in both the state and federal matters withdrew from representing him. In May of 2010, DeGuelle's counsel must have determined that continuing their relationship with DeGuelle in the federal court action would not be beneficial. (*See* Docket #20; *see also* December 7, 2010 withdrawal notice). Though DeGuelle's attorneys—Janet Heins and James Walscheske, the same trial counsel that represented DeGuelle in the state court action—were not formally terminated from representing him until December of 2010, DeGuelle proceeded with his appeal *pro se* beginning in May of 2010. (Docket #15, #19, #20). Then, in July of 2010, DeGuelle's trial counsel was allowed to withdraw

Case 2:10-cv-00103-JPS   Filed 05/29/12   Page 5 of 22   Document 54

from representing him in the state court action. (DPFF ¶ 17). Thus, it is clear that he ended his relationship with trial counsel in both the state and federal matters between May of 2010 and July of 2010.

Thereafter, DeGuelle proceeded *pro se* in the state court action as well as on appeal. (DPFF ¶ 17, Docket #15, #19, #20).

DeGuelle was fortunate, however, to secure the *pro bono* counsel of several lawyers from Jenner & Block, who assisted him in preparing and arguing his appeal before the Seventh Circuit (and who have graciously continued to assist him in opposing the defendants' motion for summary judgment). (Docket #24).

### 1.2.4   Continuation of State Court Action

While DeGuelle's appeal was pending before the Seventh Circuit, DeGuelle continued forward in a *pro se* capacity in his state court action (the attorneys from Jenner & Block did not assist DeGuelle in the state court action). (*See, e.g.*, DPFF ¶ 18–40). DeGuelle continued the discovery process that was begun before the withdrawal of his initial trial counsel, naming an expert witness, for example, to act as a tax expert in the matter. (DPFF ¶ 19).

Then, in a conference before the Racine County Court on December 13, 2010, apparently anticipating that S.C. Johnson would shortly file a motion for summary judgment, the state court judge offered DeGuelle a description of the summary judgment process. (PPFF ¶ 102 and Def.'s Response; DeGuelle Decl. Ex. 1, at 50–52). The state court judge discussed the purpose of the summary judgment motion, the summary judgment standard, and the documents that DeGuelle would need to file to oppose the motion (such as counter-affidavits, deposition excerpts, etc.). (PPFF ¶ 102 and Def.'s

Response; DeGuelle Decl. Ex. 1, at 50–52). For the sake of clarity, the Court

provides the text of the relevant portion of the judge's discussion:

> Once they file the motion with the supporting affidavits, you'll be required -- if -- what the summary judgment is, there's two basic matters relating to summary judgment. One, is there an issue of fact, and sometimes whether or not there's an issue as to the applicable law. But generally speaking, the summary judgment is in terms of issue of fact.
>
> So to give you a -- to give you a very simplistic example, let us assume that you sue somebody alleging that they have hit you. All right. And they file a motion for summary judgment saying you didn't hit -- I didn't hit Mr. DeGuelle. All right. And you file an affidavit saying, no, you did hit me. Well, there's a -- there's an issue of fact there. Did the hitting take place? So summary judgment would not -- would not occur there.
>
> What they're going to -- I'm assuming going to be doing is they will be filing a motion to indicate: One, there are certain un -- I'm guessing they're going to say there's some undisputed facts here or facts that are not in dispute. All right.
>
> And they're going to say, based upon the fact that these facts are not in dispute, we are, as a matter of law, entitled to judgment. Now, the difference is on the judgment on the pleadings, you're dealing just with the pleadings. All right. In a summary judgment motion, what they can do is they can take excerpts from depositions. They can use affidavits that are prepared by people from S.C. Johnson, etc., etc., and say these are the facts in support of this motion. All right.

Once you get the motion with the supporting affidavits
with the depositions, you have the right -- actually, you
almost have the obligation under the summary
judgment statute, if there's an issue of fact, to prepare
counter-affidavits, okay, indicating -- for example, if
there's a -- if there's -- I think Mr. Wenzel is a name that
appears throughout this litigation, right?

So if Mr. Wenzel has an affidavit and says, A, B, C, D,
and E occurred between me and Mr. DeGuelle, you may
very well have an affidavit that says, no, it didn't. This
is what happened. All right. That creates an issue. Once
it's filed, I will talk to you about it again. All right.

(PPFF ¶ 102 and Def.'s Response; DeGuelle Decl. Ex. 1, at 50–52).

Eventually, on March 9, 2011, S.C. Johnson filed the anticipated
motion for summary judgment in the state court action. (DPFF ¶ 21). S.C.
Johnson, of course, attached affidavits to that motion, including an affidavit
from Todd Maynes, an expert witness and tax partner at the law firm of
Kirkland & Ellis; Maynes stated, in his affidavit, that S.C. Johnson had not
committed tax fraud. (DPFF ¶ 33).

In response, on April 8, 2011, DeGuelle filed a letter with the state
court, responding to the motion for summary judgment. (DPFF ¶ 28). In that
letter, DeGuelle discussed several factual disputes he had with the affidavits
submitted by S.C. Johnson. (DeGuelle Decl. Ex. 2, at 6–10). He did not,
however, raise those disputes in a sworn affidavit; in reality, DeGuelle did
not submit any affidavits in support of his letter responding to S.C. Johnson's
motion. (*See* DeGuelle Decl. ¶ 13, Ex. 3).

The Racine County Court held a hearing on the summary judgment
motion on April 15, 2011, at which time the state court judge ruled that S.C.

Johnson was entitled to summary judgment on the merits of its defamation, replevin, and breach of confidentiality claims. (DPFF ¶¶ 31, 32, 36, 37, 40). The judge also ruled against DeGuelle on the merits of his counterclaims. (DPFF ¶¶ 36, 39, 40).

The primary reason for the state court's ruling was DeGuelle's failure to submit an affidavit that would create an issue of fact. (*See, e.g.*, DPFF ¶¶ 31–40). With regards to his ruling in favor of S.C. Johnson on the merits of their defamation claim, the state court judge reasoned that S.C. Johnson had submitted the affidavit of its tax expert, which went to show that S.C. Johnson had not committed tax fraud; therefore, DeGuelle, having failed to offer any evidence—such as an affidavit—to establish that S.C. Johnson had actually engaged in tax fraud, the state court judge was obliged to find that no tax fraud had occurred. (*See, e.g.*, DPFF ¶¶ 31–40). Flowing from that finding that there had been no tax fraud, the state court judge held that DeGuelle was liable for defamation of S.C. Johnson, given that he had publicized a falsity. (*See, e.g.*, DPFF ¶¶ 31–40).

Important for this Court's discussion, though, is the fact that the state court judge based that line of decision on DeGuelle's failure to submit an affidavit. The state court judge refused to treat DeGuelle's letter submission as an affidavit or to allow DeGuelle to offer sworn testimony before the state court. (PPFF ¶¶ 105–06). The state court judge was very concerned with DeGuelle's failure to comply with the standard procedure of responding to a motion for summary judgment with both a brief and an affidavit; that concern for procedure seemed to animate his decision not to allow DeGuelle

to testify under oath or have his letter treated as an affidavit.[2] (*See, e.g.*, DeGuelle Decl. Ex. 3, at 49 (judge refusing to allow letter to be treated as affidavit because "it [was] in an incorrect form," or to take sworn testimony from DeGuelle because "[t]here has to be—there has to be a procedure")). However, the state court judge also made clear that, in reality, DeGuelle's letter did little to rebut the clear testimony of S.C. Johnson's witness; the judge stated that "you haven't responded to the affidavits. You haven't really provided—to be honest, you haven't provided anything other than your own opinion, not sworn to, that they committed a crime.... You don't have anything." (DeGuelle Decl. Ex. 3 at 63–66).

---

[2]At this point, the Court should note that it does not hold any opinion on the decision of the state court judge to refuse to make a procedural exception for DeGuelle. DeGuelle, while not a lawyer, is certainly a well-educated individual who should be able to follow instructions, retain a new and knowledgeable lawyer, or at the very least to inquire into the proper procedure he should follow. The proof of this is in the pudding: if DeGuelle was able to spot potential tax inaccuracies, he is certainly a detail-oriented enough individual to make a good faith effort to comply with standard court practice—if prison inmates with limited access to court materials can do it, then certainly an individual holding himself out to be a certified public accountant can.

This Court sympathizes with the state court judge. Throughout the course of this litigation, DeGuelle's actions have been somewhat perplexing, from his apparent inability to retain a lawyer to his direct contacting of this Court via letter to dispute alleged facts (Docket #52) in spite of the problems that sort of action caused him at the state court. At some point in litigation, the font of goodwill and understanding from judge to litigant is bound to run dry—thus, this Court, not being aware of the events preceding the state court judge's decision, cannot begin to fault the state court judge.

This Court cannot pass upon the actions of the state court judge; rather, it passes only upon whether the procedure he conducted should be sufficient to preclude DeGuelle from arguing his case before this Court.

Having reached a determination on DeGuelle's liability, the state court judge presided over a trial as to the damages on May 31, 2011, and June 1, 2011, awarding S.C. Johnson a total of $50,000 in damages and ordering that DeGuelle permanently delete all S.C. Johnson-related documents from his computer. (DPFF ¶¶ 41–44).

Final judgment was entered September 7, 2011, in the state court action, which DeGuelle has appealed; that appeal is currently pending before the Wisconsin Court of Appeals.[3] (DPFF ¶¶ 45–46).

### 1.2.5 Outcome of Federal Appeal

Finally, on December 15, 2011, the Seventh Circuit reversed this Court's prior decision, which had dismissed DeGuelle's claims. *DeGuelle v.*

---

[3]After reviewing the case law, the Court has concluded that it can pass upon the preclusive nature of the state trial court's ruling, despite the pending state court appeal. It is sometimes "sensible to stay proceedings until an earlier filed state case has reached a conclusion." *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-21, 96 S.Ct. 1236, 1246-48, 47 L.Ed.2d 483 (1976)); *LaDuke v. Burlington Northern R.R.*, 879 F.2d 1556 (7th Cir. 1989); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 25-26, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983); *Gonzalez v. Cruz*, 926 F.2d 1 (1st Cir. 1991); *Interstate Material Corp. v. Chicago*, 847 F.2d 1285 (7th Cir. 1988); *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356 (2d Cir. 1985). But here, because the Court ultimately concludes that this action is not barred by issue or claim preclusion as to some individuals, it will not temporarily delay this case; the action has been pending for over two years at this point—it is nigh time for it to conclude. The Court's decision is also consistent with Wisconsin law on the preclusion issue, which the Court must follow, *Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and which holds that a pending appeal does not deprive the lower court judgment of its preclusive effect. *Town of Fulton v. Pomeroy*, 111 Wis. 663, 87 N.W. 831, 833 (1901); *see also Kaprelian v. Bowers*, 11-CV-1582, 2012 WL 70180 (7th Cir. Jan. 10, 2012); *Virnich v. Vorwald*, 664 F.3d 206, 215–16 (7th Cir. 2011); *Vince v. Randy Iten Chevrolet, Inc.*, 02-C-0088-C, 2002 WL 32350054 (W.D. Wis. Dec. 5, 2002); *Omernick v. La Rocque*, 406 F.Supp. 1156, 1160 (W.D. Wis. 1976).

*Camilli*, 664 F.3d 192 (7th Cir. 2011) (reversing this Court's decision, issued at Docket #11). In reversing this Court's decision, the Seventh Circuit found that DeGuelle had pled sufficient facts in his complaint to show that the "continuity plus relationship" test was satisfied and, as such, DeGuelle should have been allowed to escape a motion to dismiss on his § 1962(c) RICO claim. *Id.*, at 23. Similarly, the Seventh Circuit held that DeGuelle had stated sufficient facts to show that the defendants agreed to engage in tax fraud; therefore, the Seventh Circuit reversed the decision of this Court on that matter as well, holding that DeGuelle should be allowed to maintain his § 1962(d) RICO claim.

Shortly after the Court received this matter on reversal, the defendants answered DeGuelle's complaint (Docket #28). On March 1, 2012, the defendants submitted the motion for summary judgment now before the Court. (Docket #38). The parties having fully briefed the issues raised therein, the Court now takes those issues up.

2.     STANDARD OF REVIEW

Summary judgment is proper when the record establishes that there are no "genuine issue[s] of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists when a rational factfinder could find in favor of the non-moving party; in determining whether any material fact exists, the Court must construe all of the facts in a light most favorable to the nonmoving party and draw any reasonable inferences in the nonmoving party's favor. *Ricci v. DeStefano*, -- U.S. ---, 129 S.Ct. 2658, 2677, 174 L.Ed. 2d 490 (2009); *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). However, a mere

scintilla of evidence is insufficient to create such a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

3.     DISCUSSION

This Court must give the state trial court's judgment full faith and credit. *See, e.g.*, 28 U.S.C. § 1738; *Allen v. McCurry,* 449 U.S. at 95–96; *Staats v. Cty. of Sawyer*, 220 F.3d 511, 514 (7th Cir. 2000); *Froebel v. Meyer*, 217 F.3d 928, 933 (7th Cir. 2000). As such, the Court must apply the Wisconsin law of preclusion to determine whether DeGuelle's action is precluded from going further by virtue of the outcome of the state court action. *Froebel*, 217 F.3d at 933.

The defendants argue that, under Wisconsin law, two forms of preclusion bar DeGuelle's action from proceeding further in this Court: issue preclusion (also called collateral estoppel); and claim preclusion (also called *res judicata*). (*See, e.g.*, Def.'s Br. in Supp. 6 (citing *Northern States Power Co. v. Burgher*, 189 Wis. 2d 541, 549, 525 N.W.2d 723, 727 (1995); *Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458, 463 (1994); *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 310, 334 N.W.2d 883, 885 (1983)). The concepts of issue preclusion and claim preclusion, while differing in application, are designed to prevent relitigation of already-decided matters, thereby promoting judicial efficiency and fairness to the victor in the first matter. *See, e.g.*, *Northern States*, 189 Wis. 2d at 549, 525 N.W.2d at 727; *DePratt*, 113 Wis. 2d at 310, 334 N.W.2d at 885. However interested the Court may be in advancing those important goals, it must nonetheless closely examine the situation at hand to determine whether either form of preclusion applies to the situation and whether such application is fundamentally fair.

3.1     Issue Preclusion

The doctrine of issue preclusion applies and bars re-litigation when "an issue of law or fact…has been actually litigated and decided in a prior action." *Northern States*, 189 Wis. 2d at 550, 525 N.W.2d at 727. There is a two-step process to determine whether the Court should apply the doctrine of issue preclusion to the situation at hand: first, the Court must determine whether issue preclusion can be applied as a matter of law; and second, the Court must determine whether application in the given circumstances would be fundamentally fair. *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶¶ 36–38, 300 Wis. 2d 1, 728 N.W.2d 693.

3.1.1     Application of Issue Preclusion as a Matter of Law

For issue preclusion to apply as a matter of law, two elements must be satisfied: first, the issue or fact alleged to be precluded must have been actually litigated and decided in the prior proceeding; and second, the other court's decision on the issue or fact must have been essential to the judgment. *Id.* at ¶ 37. Thus, the Court must determine whether both of those elements are satisfied on the issues of tax fraud and retaliation, both of which are necessary for DeGuelle to proceed on his RICO claims. *DeGuelle*, 664 F.3d at 200 ("for DeGuelle's claims to have any merit, the retaliation predicate acts must be grouped with predicate acts of fraud to form a pattern of racketeering activity.")

On both of those issues, issue preclusion may be appropriately applied as a matter of law. With respect to the issue of tax fraud, the defendants correctly point out that DeGuelle failed to dispute that issue preclusion applies as a matter of law; thus, he has waived any argument otherwise, and the Court accepts that issue preclusion applies as a matter of law to the issue

of tax fraud. (Def.'s Reply, 4 (citing *Jackson v. Kohlwey*, No. 08-CV-0647, 2010 WL 1186282, at *8 (E.D. Wis. Mar. 19, 2010)); *see also Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 624 n.3 (7th Cir. 2001)).

Further, the doctrine of issue preclusion applies as a matter of law to a portion of DeGuelle's retaliation claims. DeGuelle essentially identifies four acts of retaliation: his termination; S.C. Johnson's state court suit against him; and two negative performance reviews. (Pl.'s Resp. 14–15). The first of those acts was both actually litigated and essential to the state court's decision, and thus issue preclusion applies to it as a matter of law. The state court certainly decided that S.C. Johnson's termination of DeGuelle was not a retaliatory act, as DeGuelle readily acknowledges, and, therefore, the issue of retaliation was decided as to that act. (DPFF ¶ 13; Pl.'s Resp. 15 ("the retaliation pled in the state court proceeding [which was dismissed] . . . was the termination of DeGuelle's employment")). Given that the retaliatory nature of a firing is central to the question of unlawful termination, that matter was also essential. *See Tatge v. Chambers & Owens, Inc.*, 219 Wis. 2d 99, 113, 579 N.W.2d 217 (1998).

The second of those acts, S.C. Johnson's filing a state court action against DeGuelle, should not even be viewed as a retaliatory act to begin with and, therefore, cannot support DeGuelle's RICO claim. Given that S.C. Johnson was ultimately successful on their claims in state court, this Court will not view their filing of that suit as a retaliatory act. *See Prof'l Real Estate*

*Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60–61 n.5 (1993).[4] Similarly, the last two acts of alleged retaliation—the negative performance reviews—occurred before DeGuelle reported anything to any government entity regarding his suspicions of tax fraud. He received negative performance reviews in March 2008 and September 2008, respectively, well before his first interaction with a government entity in December 2008. (DPFF ¶ 12). Thus, the negative performance reviews cannot be viewed as RICO predicate acts of retaliation. *See* 18 U.S.C. §§ 1513(c), (e). In sum, issue preclusion can apply as a matter of law to all of DeGuelle's retaliation claims.

Having concluded that issue preclusion can apply as a matter of law to the issues of both tax fraud and retaliation, *see, e.g.*, *DeGuelle*, 664 F.3d at 200, the Court is obliged to dismiss this matter if it determines that application of the doctrine of issue preclusion is fundamentally fair, *Estate of Rille*, 2007 WI 36, ¶ 60.

### 3.1.2   Fundamental Fairness

Even if issue preclusion may be applied as a matter of law, it should not be applied if that application would be fundamentally unfair. *Id.* The determination of fundamental fairness is one within the discretion of the

---

[4] That case, an anti-trust action, holds that litigation should not be viewed as a "sham" when it is successful; while this case is not directly applicable to the situation at hand, the Court views it as both instructive and logical—an employer should not be deemed to be retaliating against an employee when the employer files a suit to stop what is ultimately determined to be unlawful activity). In a later case, involving alleged employer retaliation, the D.C. Circuit stated that "on proof of retaliation, employer suits that are better than baseless…may evidently be classified as sham litigation after the employer-plaintiff loses," but otherwise adopted *Prof'l Real Estate Investors*, thus implying that, if the employer succeeds in its action, the suit should not be viewed as a retaliatory act. *Petrochem Insulation, Inc. v. N.L.R.B.*, 240 F.3d 26, 32 (D.C. Cir. 2001) (citing *Prof'l Real Estate Investors*, 508 U.S. at 59–61; *Bill Johnson's Restaurants, Inc. v. N.L.R.B.* 461 U.S. 731, 741, 747 (1983)).

Court; the Court must determine whether DeGuelle has "a fair opportunity procedurally, substantively, and evidentially to pursue the claim." *Id.*, at ¶¶ 38, 60, 62–63. Specifically, the Court may examine and provide appropriate weight to five factors outlined by the Wisconsin Courts:

> (1)    whether Mr. DeGuelle is entitled to review of the state court judgment, as a matter of law;
>
> (2)    whether the question of law addressed by the state court involved two distinct claims or a shifting state of the law;
>
> (3)    whether there were significant differences in the quality or extensiveness between the state court and this Court that would warrant relitigation;
>
> (4)    whether S.C. Johnson had a lower burden of persuasion in the state court than it does in this proceeding; and
>
> (5)    whether matters of public policy and individual circumstances would render the application of issue preclusion unfair (such as an inadequate opportunity to obtain a full adjudication of the state court action).

*Michelle T. v. Crozier*, 173 Wis. 2d 681, 688–89, 495 N.W.2d 327, 330–31 (1993).

To begin, as to the first factor, DeGuelle is currently seeking review of the state court decision in Wisconsin's Court of Appeals (DPFF ¶ 46), and thus he will be able to raise any arguments regarding the unfairness of the state court judge's actions in those proceedings. Indeed, if the state appellate court is to determine that the state court judge erred in some way, DeGuelle will be able to further litigate the state court matter. Furthermore, if the state trial court decision does not stand, DeGuelle will be entitled to request that this Court reconsider the motion for summary judgment it now decides, as

issue preclusion would no longer apply if the state trial court's decision were reversed. *See, e.g., Town of Fulton,* 111 Wis. 663, 87 N.W. at 833; *Kaprelian,* 11-CV-1582, 2012 WL 70180; *Virnich,* 664 F.3d at 215–16; *Vince,* 02-C-0088-C, 2002 WL 32350054; *Omernick,* 406 F.Supp. at 1160. Given those two procedural safeguards, which will allow DeGuelle to proceed further on his claims if it is determined that the state trial court acted unlawfully, the Court determines that the first of these factors weighs in favor of application of issue preclusion.

Second, there are no significant changes in the state of the law on the issues of fraud or retaliation, because such issues are purely factual; as such, this factor also weighs in favor of issue preclusion.

Next, the Court concludes that the third factor is a wash, neither favoring nor disfavoring application of issue preclusion; there are some differences between the state court and federal court proceedings, but none that rise to the level of demonstrable unfairness. This factor "examines the procedural aspects of the first proceeding, such as the ability to conduct discovery and introduce evidence, the availability of counsel, and the relative burdens of proof." *Rille,* 2007 WI 36, ¶ 91. The only one of those aspects that differs between the state and federal court proceedings is the availability of counsel. At the time of the state court summary judgment proceedings, DeGuelle was proceeding pro se; on the other hand, in this proceeding, thanks to the efforts of his *pro bono* counsel Mr. DeGuelle is represented. Despite that difference, the proceedings in the state court and this Court are predominantly the same and, therefore, the Court cannot determine that this factor weighs against the application of issue preclusion.

Fourth, the Court determines that the respective burdens of proof in this matter, as well as in the state court, actually made it more difficult for S.C. Johnson to prevail in the state court action than to prevail here; accordingly, this factor weighs in favor of the application of issue preclusion. In the state Court matter, S.C. Johnson had to prove that DeGuelle's statements about tax fraud were demonstrably false. (*See, e.g.*, DPFF ¶¶ 30–44). On the other hand, here, it is DeGuelle who carries the burden, and he must establish fraud to succeed in his action. *DeGuelle*, 664 F.3d at 200. On the retaliation prong of his claim, DeGuelle's burden of proof is precisely the same: preponderance of the evidence. Because DeGuelle, in fact, carried the same or a lighter burden in the state court proceedings, this factor weighs in favor of the application of issue preclusion.

Finally, as to the last factor, the Court determines that considerations of individual circumstances and public policy end up zero-sum, neither weighing in favor of nor weighing against the application of issue preclusion. There are certainly some individual circumstances that weigh against application of issue preclusion: DeGuelle did not have an attorney and the state court judge would not let DeGuelle swear out his statements in Court (resulting in the facts of S.C. Johnson's tax fraud remaining somewhat in dispute, as DeGuelle has never produced an expert witness to rebut S.C. Johnson's expert).

However, those difficult individual circumstances are somewhat mitigated by DeGuelle's personal decisions and also by the relevant case law. To begin, DeGuelle made a personal decision to proceed without an attorney. Further, knowing that he did not have a legal counselor, and despite the state court judge's indication that DeGuelle would need to file supporting

materials such as affidavits, DeGuelle declined to contact the state court judge's chambers to clarify what would be required of him. Thus, he did not discover the basic procedural requirements of litigation—a failure that can only be put upon DeGuelle, himself. Further, in Wisconsin, *pro se* litigants are bound to follow the same rules as represented parties. *See, e.g.*, *Waushara Cty. v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992); *Vitrano v. Lessard*, No. 2010AP2503, 2011 WL 6032832, at *2 (Wis. Ct. App. Dec. 6, 2011); *see also Lyon v. Brown*, 151 F.3d 1033 (7th Cir. 1998) (citing *Downs v. Westphal,* 78 F.3d 1252, 1257 (7th Cir. 1996) for same proposition in federal litigation). Finally, Wisconsin does not have any *per se* rule that requires a litigant have some form of representation in order for issue preclusion to apply; it can apply regardless of whether the litigant proceeded in the first action *pro se*, so long as the Court determines that such application is not unfair. *See In re Wilson*, 216 B.R. 258, 266 (Bankr. E.D. Wis. 1997); *In re Mikulsky*, 301 B.R. 726, 729 ("in Wisconsin, the doctrine of issue preclusion does not require the party to be fully represented by counsel in the prior action.").

There is also no public policy that weighs against the application of issue preclusion here; and, in fact, the public policy of preservation of judicial resources weighs in favor of applying the doctrine. The Court, as are all judicial bodies in this country, is already burdened with a substantial number of other cases in which it must play its role. In cases such as this, in which the main issues have already been determined, the Court should not spend further judicial resources entertaining the relitigation of such matters. Furthermore, the Court should not engage in creating a second decision on those matters, for fear of creating conflicting decisions between the two cases that could lead to confusion amongst the parties and the courts.

Thus, the above-mentioned public policies weigh in favor of the application of issue preclusion, but must be set against the negative individual circumstances faced by Mr. DeGuelle. Setting the two against one another, the Court concludes that, in the best case for Mr. DeGuelle, the fifth factor does not clearly weigh in either direction, either for or against the application of issue preclusion.

Having discussed all five factors, the Court has determined that three weigh in favor of application of issue preclusion, none weigh against such application, and two are neutral. Thus, whatever weight the Court were to give to each individual factor, it would be obliged to conclude that the factors weigh in favor of application of issue preclusion.

Thus, the Court concludes that the application of issue preclusion to the relevant facts before the Court is fundamentally fair.

4.      CONCLUSION

Having concluded that issue preclusion applies as a matter of law to DeGuelle's RICO claim, and also that such application would be fundamentally fair, the Court must also apply issue preclusion to his claims. In doing so, the Court grants S.C. Johnson's motion for summary judgment (Docket #38), and thus dismiss this case. Finally, the Court need not address the matter of claim preclusion since it has determined that the entire action should be dismissed outright due to its application of the doctrine of issue preclusion.

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment (Docket #38) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED, together with costs as taxed by the Clerk of Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day oif May, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge